IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF TEXAS, *et al.*,

    Plaintiffs-Appellees,

    v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants-Appellants.

No. 16-11534

**REPLY IN SUPPORT OF DEFENDANTS-APPELLANTS'
MOTION FOR PARTIAL STAY PENDING APPEAL**

## INTRODUCTION AND SUMMARY

The purpose of a preliminary injunction is "merely to preserve the relative positions *of the parties* until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added). The general principle that an injunction must extend no further "than necessary to provide complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), applies with particular force to preliminary relief, where the merits have not been fully litigated.

Plaintiffs do not contend that the preliminary injunction here complies with these standards. The injunction alters the status quo with respect to States and third parties who have no connection with this litigation—including twelve amici States who asked *not* to be subject to any injunction. The injunction is particularly anomalous because it substitutes the district court's assessment of imminent injury for that of the Amici States who, unlike the district court, are accountable to their own citizens. Such impact on non-parties might, in theory, be justified if necessary to prevent imminent harm to the plaintiffs. But plaintiffs do not contend that the injunction's reach to non-parties is necessary to prevent injury to themselves. No such assertion would be plausible.

Plaintiffs mistakenly contend that the Administrative Procedure Act ("APA") negates recognized limitations on the proper scope of preliminary relief. Plaintiffs make no effort to reconcile that position with the APA itself, which provides that interim relief pending final judgment is available only "to the extent necessary to

prevent irreparable injury." 5 U.S.C. § 705. Indeed, their position is at odds with the very cases on which they purport to rely.

Plaintiffs' discussion of the merits of the underlying case has no bearing on this stay request. Defendants have "conceded" nothing about the correctness of the district court's rulings. Opp. 17. The question presented now is whether the district court could properly order preliminary relief that interrupts the federal agencies' relationships with other States and third parties who never sought such relief, many of whom expressly "welcome and support" the agencies' assistance. Amici States Br. 24. The district court manifestly abused its discretion in arrogating to itself that power.

## I. Preliminary Injunctions In APA Cases, As In All Cases, Must Extend No Further Than Necessary To Provide Relief To Plaintiffs.

Plaintiffs do not contest the fundamental rule that an injunction must extend no further "than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994) (quoting *Califano*, 442 U.S. at 702). Plaintiffs instead contend that this rule is inapplicable on the theory that "APA § 706 expressly allows facially invalid rules to be set aside in their entirety, not merely enjoined as to particular plaintiffs." Opp. 2.

Plaintiffs' contention is flatly at odds with the APA itself. Preliminary relief under the APA is governed by 5 U.S.C. § 705, which provides that "*to the extent necessary to prevent irreparable injury*, the reviewing court" in an APA action "may issue all necessary and appropriate process . . . to preserve status or rights *pending conclusion of*

2

*the review proceedings.*" 5 U.S.C. § 705 (emphasis added). In allowing preliminary injunctions only "to the extent necessary to prevent irreparable injury," *id.*, the APA codifies the equitable principle that preliminary injunctions are not designed to "'enjoin all possible breaches of the law,'" but rather to "remedy the specific harms" allegedly suffered by plaintiffs" themselves, *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983); *see also id.* (preliminary injunctions exist for the "'limited purpose' of maintaining the status quo" and must be "particularly" tailored to plaintiffs); 5 Stein et al., Administrative Law § 49.03 (2016) (§ 705 relief is "governed by equitable principles").

The two D.C. Circuit cases on which plaintiffs rely—*Nat'l Mining Ass'n v. Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998) and *Harmon v. Thornburgh*, 878 F.2d 484 (D.C. Cir. 1989)—concerned statutory relief issued on final judgment and are thus inapposite. Whether a rule, following plenary review, should be "'vacated,'" *Harmon*, 878 F.2d at 495 n.21, is distinct from whether "enforcement" of that rule should be "enjoined" on an emergency basis with respect to particular plaintiffs who claim immediate, irreparable harm.[1] Plaintiffs acknowledge as much: ordinary rules governing vacatur do not "apply in a posture like this one," wherein "the entire point"

---

[1] These cases also reflect the D.C. Circuit's view of its unique role in deciding questions under statutes that authorize suit within that Circuit notwithstanding customary venue restrictions. *See Nat'l Mining Ass'n*, 145 F.3d at 1409. But the D.C. Circuit also recognizes that in APA cases, as in other litigation, injunctions "must be narrowly tailored to remedy the specific harm shown." *State of Nebraska v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (collecting cases).

is deciding whether a "preliminary injunction . . . to preserve the status quo pending a final judgment" is necessary. Opp. 6 n.4. Yet plaintiffs entirely fail to cite § 705, the operative APA provision.

In any event, the injunction would overstep the district court's authority even were it entered on final judgment after consideration of the administrative record, which was not before the court at this preliminary stage. Plaintiffs' argument fails to account for the large number of APA cases recognizing, even at final judgment, that any injunction must be no broader than necessary to afford complete relief to plaintiffs. *See, e.g.*, *Lion Health Servs. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011); *L.A. Haven Hospice v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011); *John Doe #1 v. Veneman*, 380 F.3d 807, 819 (5th Cir. 2004); *Kentuckians for Commonwealth v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir. 2003); *Virginia Soc'y for Human Life v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001), *overruled on other grounds by The Real Truth About Abortion v. FEC*, 681 F.3d 544 (4th Cir. 2012).

Plaintiffs' reliance on *Califano v. Yamasaki* is similarly misplaced. Plaintiffs repeatedly cite *Califano*'s observation that "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Califano*, 442 U.S. at 702. That statement simply confirms that the controlling consideration of equity jurisprudence is not where the parties are located, but rather, what is necessary to afford "complete relief" to the plaintiffs for the particular harms

4

that they have "established." *Id.*[2] The Court's holding makes this point crystal-clear: "If a class action is otherwise proper, and if jurisdiction lies over the claims of the members of the class, the fact that the class is nationwide in scope does not necessarily mean that the relief afforded the plaintiffs will be more burdensome than necessary to redress the complaining parties." *Id.* Plaintiffs' contrary suggestion—that the "extent of the violation established" language entitles them to litigate, and obtain relief for, the claims of third parties allegedly harmed by the same action—finds no support in the Supreme Court's decision, which nowhere suggests that a court should provide injunctive relief to third parties. Rather, *Califano* expressly recognizes that "the relief afforded the plaintiffs" must be no "more burdensome than necessary to redress the complaining parties." *Id.*; *see also Madsen*, 512 U.S. at 765; *Lion Health Servs.*, 635 F.3d at 703.

Moreover, this case is *not* a "nationwide class action[]." *Califano*, 442 U.S. at 702. Plaintiffs cannot invoke the court's equitable authority to circumvent the normal procedure for representative litigation. *See Hernandez v. Reno*, 91 F.3d 776, 781 (5th Cir. 1996) (holding that classwide relief was unnecessary to remedy plaintiff's injury and inappropriate absent class certification); *Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d

---

[2] Plaintiffs err in suggesting that this motion challenges the preliminary injunction's "proper geographical scope." Opp. 6 n.4. Despite the district court's references to "nationwide" injunctions, the relevant distinction is between party and non-party relief, not between relief in one part of the country versus relief throughout the country. *See* U.S. Mot. 12 & n.5 (explaining this point).

5

92, 93 (5th Cir. 1974) (same); *L.A. Haven Hospice*, 638 F.3d at 664-65 (same). And the Supreme Court has held that the federal government is not precluded from relitigating a particular legal issue—*e.g.*, an alleged rule's validity—in successive cases involving different parties. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984) (holding that federal government is not "further bound in a case involving a litigant who was not a party to the earlier litigation."). The preliminary injunction disregards that precedent by imposing the district court's legal ruling not merely on plaintiffs here, but on the federal government's interactions with every State and school in the entire country. It is for the Supreme Court—not the district court—to decide when and how to resolve such a question on a nationwide basis.

## II. Plaintiffs Are Entitled To Relief Only To The Extent They Show Irreparable Harm.

The function of a preliminary injunction is to "prevent irreparable injury" to a plaintiff pending an opportunity for merits adjudication. *Justin Indus. v. Choctaw Secs.*, 920 F.2d 262, 269 (5th Cir. 1990). A plaintiff is entitled to a preliminary injunction against a defendant only as to those actions that cause the plaintiff irreparable harm. "'The desire to obtain (sweeping relief) cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that *his individual need* requires the remedy for which he asks.'" *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-22 (1974) (emphasis added).

6

Plaintiffs do not contend that the preliminary injunction's extension to non-parties is necessary to prevent imminent injury to themselves, and they make no attempt to defend the district court's reasoning on this score. The district court declared that "limit[ing] the injunction to the plaintiff states who are a party to this cause of action[] risks a 'substantial likelihood that a geographically-limited injunction would be ineffective.'" Order (ECF No. 86), at 4 (quoting *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015)). But under *Texas*, non-plaintiff relief is permitted only in "appropriate circumstances," such as where the ability of aliens to migrate across state lines would frustrate any injunction that applied only to certain States. 809 F.3d at 188. Here, however, non-plaintiff relief is indisputably unnecessary to remedy plaintiffs' own alleged injuries. The preliminary injunction is therefore improperly broad. *See, e.g.*, *Hernandez*, 91 F.3d at 781 (modifying the injunction "to apply to [plaintiff] only," thereby vacating it insofar as it regulated defendants' interactions with non-plaintiffs, because such "breadth . . . [was] not necessary to remedy the wrong suffered by [plaintiff]").[3]

---

[3] Plaintiffs' own cases (Opp. 6) underscore that non-plaintiff relief is permissible only in limited circumstances. *See Texas v. United States*, 787 F.3d 733, 769 (5th Cir. 2015) (upholding non-plaintiff relief on same grounds as *Texas*, 809 F.3d 134); *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 374 (5th Cir. 1981) (recognizing that "[i]njunctive relief which benefits non-parties may sometimes be proper," where the relief is "designed to assist a party" and affects nonparties "accident[al]ly") (citing *Gregory v. Litton Sys.*, 472 F.2d 631 (9th Cir. 1972)); *cf. Gregory*, 472 F.2d at 633-34 (noting that injunctive relief may "incidentally benefit" non-parties when "necessary to give a plaintiff . . . the relief to which [it is] entitled," but vacating injunction that

7

### III. The Defendant Agencies And Third-Party States, Schools, And Students Will Suffer Irreparable Harm Absent A Stay.

As noted, twelve States and the District of Columbia have participated as amici curiae specifically to oppose entry of any preliminary injunction affecting their interests. The Amici States explained that their relationships with the defendant agencies "overwhelmingly benefit the public," Amici States Br. 4, underscoring that many schools work harmoniously with the federal government to tackle self-identified problems and to combat discrimination. The preliminary injunction abruptly halts that cooperation. Now "even [schools] who would be entirely willing to work with [the Department of Education] to find ways to accommodate the needs of their transgender students consistent with federal law are unable to obtain [the Department's] assistance." Lhamon Decl. ¶ 29.

Plaintiffs do not deny these effects. Rather, plaintiffs proclaim that States who currently work with federal officials to protect their transgender students from facilities-related sex discrimination should instead rely on state law and state resources. Plaintiffs thereby claim the right to deprive other sovereign States of the agency assistance that those States "welcome" and to which they are entitled under federal law. Amici States Br. 24. Plaintiffs offer no support for their remarkable assertion that other States must "creat[e] their own laws or regulations" in order to counteract

---

provided "benefits for nonparties . . . neither incidental nor necessary to the resolution of the pending litigation").

the injuries resulting from the district court's insistence on applying its preliminary injunction beyond plaintiffs. Opp. 20.

Plaintiffs' contention that the preliminary injunction "merely maintains the longstanding status quo" for the federal agencies and non-plaintiff States is without foundation. Opp. 15. Even before the May 2016 Dear Colleague Letter, the Department of Education had been working for years to investigate alleged discrimination against transgender students, including issues surrounding access to bathrooms and similar facilities. Lhamon Decl. ¶¶ 11-23. Indeed, through voluntary resolutions, the Department has achieved numerous successes in remedying facilities-related discrimination against transgender students, many of which involved practical measures to promote the privacy and safety of all students. *Id.* ¶¶ 19-23. The district court's preliminary injunction disrupts the status quo by completely shutting down the Department's efforts in this area, *id.* ¶¶ 26-33, with the result that countless transgender students facing denial of restroom access and related harassment, bullying, and stigma are currently left without the full protections of federal law.

Plaintiffs incorrectly assert that defendants have "completely changed their position" by "asserting irreparable injury from being unable to *immediately enforce the Guidelines.*" Opp. 16 (emphasis added). Defendants do not seek to "enforce" the Guidelines, which are non-binding guidance documents that lack the force and effect of law. The injury resulting to defendants from the district court's ruling is not an inability to "enforce" the guidance documents. The injury results from the bar against

9

"initiating, continuing, or concluding" certain investigations based on the agencies' interpretation of the statute itself, PI Order (ECF No. 58), at 37, and from regulating defendants' conduct in litigation not "substantially developed" by August 21, 2016, Order (ECF No. 86), at 6 n.2. Plaintiffs freely admit that under their view of the preliminary injunction, "Defendants cannot affirmatively enforce *either* the Guidelines *or their interpretation of Titles VII and IX*." Opp. 19 n.13 (emphasis added).[4] Plaintiffs do not, and cannot, deny that this interruption of defendants' activities under the statute itself works irreparable harm to the federal agencies, States, schools, and students involved.

Finally, plaintiffs disregard fundamental equitable principles in urging the Court to ignore the preliminary injunction's impact on non-parties and consider only irreparable harm to "parties to the litigation." Opp. 20. The principle that a preliminary injunction should be tailored to the plaintiffs applies with particular force when more sweeping relief would cause harm to third parties and is unnecessary to remedy plaintiffs' alleged harm.

---

[4] The preliminary injunction thus improperly reaches beyond the only purported "final agency action" over which the district court found it had jurisdiction: the challenged Guidelines. *See* PI Order (ECF No. 58), at 15-19; *cf. John Doe*, 380 F.3d at 819 (holding that an "injunction is necessarily overbroad" if it "exceeds the scope of available judicial review").

## CONCLUSION

For the foregoing reasons, the preliminary injunction should be stayed insofar as it applies beyond plaintiffs.

Respectfully submitted,

BENJAMIN C. MIZER
  Principal Deputy Assistant
    Attorney General

AUGUST E. FLENTJE
  Special Counsel to the Assistant
    Attorney General

MARK B. STERN
MARLEIGH D. DOVER
/s/ Jeffrey E. Sandberg
JEFFREY E. SANDBERG
THAIS-LYN TRAYER
  Attorneys, Civil Division, Appellate Staff
  U.S. Department of Justice
  950 Pennsylvania Avenue, N.W.
  Room 7214
  Washington, DC 20530
  (202) 532-4453

*Counsel for the United States of America, et al.*

December 9, 2016

# CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2016, I electronically filed the foregoing reply with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
Attorney, U.S. Department of Justice
Civil Division, Appellate Staff

*Counsel for the United States of America, et al.*

---

# CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(g)(1), I hereby certify that this reply complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(2)(C) because it contains 2,600 words, excluding the items set forth in Fed. R. App. P. 32(f). I further certify that this reply was prepared in 14-point Garamond, a proportionally spaced font.

/s/ Jeffrey E. Sandberg
Jeffrey E. Sandberg
Attorney, U.S. Department of Justice
Civil Division, Appellate Staff

*Counsel for the United States of America, et al.*
